No. 26,166.

W. C. ROBINSON et al., *Plaintiffs*, v. JOSIAH JONES et al., as County Commissioners of the County of Butler, and WILL BLAIR, as County Clerk, *Defendants*.

SYLLABUS BY THE COURT.

1. MANDAMUS—*County Commissioners—Compelling Compliance With Order of Tax Commission.* Mandamus is a remedy properly invocable by an aggrieved taxpayer to compel a board of county commissioners to comply with an order of the tax commission to· cancel uncollected taxes and to refund taxes which have been collected.

2. SAME—*Defenses of Commissioners—Erroneous Order.* In an action of mandamus by a taxpayer to compel a board of county commissioners to obey an order of the tax commission to cancel and refund taxes, the board may defend on the ground the order was erroneous as a matter of law.

3. TAXATION—*Persons Liable—Overriding Royalties.* By virtue of R. S. 79-329, 79-330, and 79-331, overriding royalties, carved out of the working interest created by an oil lease, are taxable to the owners of such royalties.

Original proceedings in mandamus. Opinion filed November 7, 1925. Writ denied.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the plaintiffs.

*R. T. McCluggage* and *Stanley C. Taylor,* both: of El Dorado, for the defendants.

The opinion of the court was delivered by

BURCH, J.:   The action is one to compel the board of county commissioners and the county clerk of Butler county to obey an order of the tax commission directing cancellation and refunding of taxes assessed under the statute relating to assessment and taxation of oil and gas leases.

Plaintiffs are owners of what are called overriding royalties. Such interests are derived in this way: A landowner calling himself lessor gives to another called lessee an instrument called an oil lease, in the common form. As consideration for the grant, the owner is to receive one-eighth of the oil produced. This interest is called royalty. The lessee's seven-eighths interest in the oil produced is called the working interest. The lessee, who may be desig-

1, 2. Mandamus, 38 C. J. § 436.   3. ·Taxation, 37 Cyc. p. 775.

39—119 KAN.

nated as A, assigns to B all his interest as lessee in five-eighths of the oil produced, together with A's privilege to enter upon the land and operate and produce. B then assigns to C all his interest in three-eighths of the oil produced, together with the privileges of the assignor and the lessee to enter upon the land and operate and produce. C enters upon the land and operates and produces oil. The lessee, A, then assigns to X one-eighth of the oil which may be produced pursuant to the lease, and B assigns to Y one-eighth of the oil which may be produced pursuant to the lease. X and Y have no connection with operation or production. The full extent of their relation to the lease is that, if oil be produced, they shall each receive one-eighth of it, delivered by the operator in tank or pipeline. The interests of X and Y are called overriding royalties. Fractional interests of the owner's royalty and of overriding royalties are often assigned and reassigned. Let it be assumed that the lessor assigns one-half of his royalty to Z. The whole interest in production may then be tabulated thus:

OWNER'S ROYALTY—
    Lessor ...................................... $\frac{1}{16}$
    Z .......................................... $\frac{1}{16}$
                                                        $\frac{1}{8}$
WORKING INTEREST—
    Lessee, A ............................... $\frac{1}{8}$
    Assignee, B ............................. $\frac{1}{8}$
    Operator, C ............................. $\frac{3}{8}$
                                                        $\frac{5}{8}$
Overriding Royalties—
    X .................................... $\frac{1}{8}$
    Y .................................... $\frac{1}{8}$
                                                        $\frac{2}{8}$
                                                                $\frac{7}{8}$

The statute reads as follows:

"That for the purpose of valuation and taxation, all oil and gas leases and all oil and gas wells, producing or capable of producing oil or gas in paying quantities, together with all casing, tubing or other material therein, and all other equipment and material used in operating the oil or gas wells, are hereby declared to be personal property, and shall be assessed and taxed as such.

"That in valuing for taxation, oil or gas properties consisting of one or more leases and oil or gas wells, there shall, in addition to the value of all oil- or gas-well material in or upon the leasehold properties, be made such valuation of the oil or gas wells as would make a reasonable and fair value of the whole property: *Provided,* That such portion of the valuation of the oil or gas wells as represents the lessor's interest, or royalty interest, therein shall be assessed to the owner thereof, and the remaining portion or working interest

Robinson v. Jones.

therein shall be assessed to the owner of the lease, together with the other property assessed in connection therewith.

"That in determining the value of oil and gas wells or properties, the assessor shall take into consideration the age of the wells, the quality of oil or gas being produced therefrom, the nearness of the wells to market, the cost of operation, the character, extent and permanency of the market, the probable life of the wells, the quantity of oil or gas produced from the wells, the number of wells being operated, and such other facts as may be known by the assessor to affect the value of the property." (R. S. 79-329, 79-330, 79-331.)

Taxes on plaintiffs' overriding royalties having been charged against them, and part of the taxes having been paid, plaintiffs appealed to the tax commission for relief, contending that overriding royalties are not taxable to the persons entitled to them. The tax commission sustained this contention, and directed cancellation of the record of the assessment of the current year, and the taxes extended on the tax rolls pursuant to the assessment, and directed the issuance to plaintiffs of refunding warrants for the taxes which had been paid. The county officers refused to comply with the tax commission's order, and assert its invalidity in the return to the alternative writ.

Defendants say plaintiffs have an adequate remedy at law: They may sue to recover the portion of the taxes paid; they may employ the remedy of injunction given by statute to taxpayers to prevent the collection of an illegal tax; or, they may pay under protest, and sue. These remedies are not quite adequate. If plaintiffs should recover a judgment against the county, it could not be collected by execution, and they would be obliged to abide the process of raising funds to pay it. Under the order of the tax commission, plaintiffs are entitled immediately to a refunding warrant. Injunction against collection of the unpaid taxes would not take the assessment and levy off the tax rolls, as the tax commission directed, and thereby remove from the record something in the nature of a cloud on plaintiffs' title. Plaintiffs' rights having been established by the tax commission, compliance with its mandate is a purely ministerial duty, and the suggested remedies are not fair substitutes for specific performance.

Plaintiffs say the tax commission, as the body having general supervision over administration of the tax laws, is specifically authorized to correct errors and remedy grievances of taxpayers, by refunding taxes unlawfully charged and collected, and by canceling taxes unlawfully charged but not collected (R. S. 79-1701, 79-1702),

and consequently the local authorities are bound by the action of the tax commission. The tax commission is an administrative body, and its decisions in all matters within the scope of its supervisory power, involving administrative judgment and discretion, are conclusive upon subordinate taxing officials. In the exercise of its functions, the tax commission must as a matter of necessity interpret the tax laws, and such interpretations are *prima facie* binding. Suppose, however, that in the case of *State v. Holcomb*, 85 Kan. 178, 116 Pac. 251, involving exemption from taxation of the waterworks plant in Wyandotte county, Kansas, owned by the city of Kansas City, Mo., the plant had been taxed, a portion of the taxes had been paid, and the Missouri municipality had appealed to the tax commission and had been granted relief similar to that granted to plaintiffs. The amount of taxable property in the county would have been reduced $200,000, taxes to the amount of $16,000 would have been canceled, and the financial affairs of the county for the current year would have been upset. A board of county commissioners acts in a double capacity. It is a part of the taxing machinery and, as such, subject to control by the tax commission. It is also the governing body of the county, responsible for proper conduct of the county's financial affairs. As such, the board has a special interest in the taxation of all property in the county subject to taxation, in retention of lawful taxes already paid to the county treasurer, and in the prompt collection of lawful taxes due and payable. Whether the waterworks plant was exempt was a pure question of law, not finally determinable by an administrative body, and the court is of the opinion that in the situation described, the county could protect its *quasi* proprietary interest against the erroneous ruling of the tax commission. In this instance, whether the overriding royalties are taxable, and if so taxable to plaintiffs, are pure questions of law, and because of the confusion of the county's financial affairs created by the tax commission's order, the county is authorized to resist plaintiffs' action on the ground the order was erroneous as a matter of law.

Plaintiffs' contention is this: They are not owners of oil deposits in the leased land. They merely own a part of the oil which may be produced, after it has been produced. The assignments giving them privilege to claim a portion of the oil produced, gave them none of the privileges of the lessee to go upon the land and operate and produce, and consequently plaintiffs have no property interest in oil taxable in Butler county.

When mineral in place is severed by deed, it is taxed as real estate to the owner, and the remainder of the land is taxed to its owner. (R. S. 79-420.) Oil and gas leases, so-called, do not affect severance of the mineral, but they are the source of intangible interests, often of great value, which are proper subjects of taxation. The legislature undertook to tax them by the statute quoted above. A unit of taxation was defined composed of the intangible interests and those physical things by means of which the object of the lease, production of mineral, is realized. This unit was given the status of personal property, and a situs at the place of production, or contemplated production. A rule for valuing the unit was stated, and taxes were apportioned according to beneficial interest. The instrumentalities of production are incidental, and the substantive value of the taxable unit consists in the *profit a prendre,* the privilege of taking mineral out of the ground. The fruit of the privilege is oil in tank or pipe line. The lessor's royalty interest is a share of produced oil, and the beneficial working interest is a share of produced oil. The royalty interest is assessed "to the owner thereof," and the remainder of the profit is assessed to "the owner of the lease."

Overriding royalties are a part of the unit to be taxed, and of necessity are taxable. Because, however, the statute provides for assessment of the working interest to "the owner of the lease," plaintiffs contend their overriding royalties, carved out of the working interest, may not be assessed to them. The court is unable to approve this interpretation.

It is not likely that the legislature intended to depart from the general policy of the tax law, which assesses personal property to the owner. It was familiar with the manner in which oil and gas privileges are divided and assigned. It likewise understood that the terms "lease," "lessor" and "lessee" are all misnomers, as applied to the grant by a landowner of license to enter, to explore for oil, and if oil be discovered to take it from the land. Therefore the phraseology of the statute is not to be taken literally. As framed, the statute recognizes only two interests and two owners: first, the lessor's interest or royalty interest, and "the owner thereof;" second, the working interest and "the owner of the lease." As indicated in the illustrative case, it is common for portions of these interests to be found in the hands of several persons. In the present case, one-half of the one-eighth royalty was assigned, and each owner was assessed $12,000 on account of his one-sixteenth interest. The lessees, Robinson and Shelley, each retained a one-sixteenth part

of the working interest. Their assignee retained a one-thirty-second part, and his assignee, the operator, held eight-sixteenths. The remainder of the working interest was divided between half a dozen owners of overriding royalties. It is quite manifest that each one of the two owners of the lessor's royalty should be assessed according to his interest. The rule that words of singular number may be extended to several persons (R. S. 77-201, subdiv. 3), governs, and the words "owner thereof," become, in practical application of the statute, "owners thereof." The same is true of the working interest. The phrase "owner of the lease" was applied to that interest in the same sense that "owner thereof" was applied to the lessor's interest. The phrase means owner of the working interest and, under the rule adverted to, includes all who share in that interest. The fact that owners of overriding royalties have no privilege to operate and produce, and get nothing until there is oil to divide, is not important. In those respects they are in the same situation as the grantor of the license, "the lessor."

The result of the foregoing is, the order of the tax commission was erroneous, and a writ of mandamus to compel compliance with the order is denied.