No. 36,437

MAE BURGIN, *Appellant*, v. OLNEY D. NEWMAN and MARIE NEWMAN, His Wife, E. L. TROCK and LOTTIE M. TROCK, His Wife, and LELAND SCROGIN and ——— SCROGIN, His Wife, *Appellees.*

(164 P. 2d 119)

Opinion filed December 8, 1945.

*A. D. Weiskirch,* of Wichita, argued the cause, and *George B. Collins* and *C. L. Williams,* both of Wichita, were on the briefs for the appellant.

*R. F. Crick,* of Pratt, argued the cause, and *B. V. Hampton,* of Pratt, was on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: Plaintiff brought an action to quiet title to land against persons who claim title to fractional interests in and to the

oil and gas and other minerals in place under the land. Defendants prevailed and plaintiff appeals.

The principal question is whether a conveyance of a one-half interest in and to the oil and gas and other minerals in place from the plaintiff Mae Burgin and her husband, Gilbert Burgin, now deceased, to the defendants, Olney D. Newman and E. L. Trock, is void by reason of the grantees' failure to record the deed within ninety days after its execution or to list it for taxation pursuant to provisions of G. S. 1935, 79-420. The grantees in that conveyance and their wives subsequently executed a one-fourth interest in and to the oil and gas and other minerals in place to the defendant Leland Scrogin. The latter instrument was recorded within ninety days after its execution. The question presented is whether the first mentioned deed is void. If it is void none of the defendants holds any title. If it is valid all defendants hold the title they claim.

In the joint answer of the defendants they alleged facts designed to show that plaintiff and her husband, grantors, did not deliver the deed to the grantees immediately upon its execution, but placed it in a bank with the understanding and agreement it was to be held by the bank until the occurrence of a definite future contingency and that it was recorded within ninety days after the occurrence of such contingency. Pursuant to the issues thus joined by the pleadings defendants assumed the burden of proof. Plaintiff's general demurrer to defendants' evidence was overruled and plaintiff introduced her evidence. Plaintiff appeals from the adverse ruling on her demurrer and from the judgment rendered in favor of the defendants.

Before narrating essential portions of defendants' evidence it will be helpful to again state a few fundamental principles governing the ruling on a demurrer to evidence. In determining such a ruling courts do not compare the evidence of witnesses or evidence of the same witness on direct and cross-examination. Only the evidence favorable to the party adducing it is considered. All such evidence is admitted as true and if it together with all inferences reasonably to be drawn therefrom in favor of the parties adducing it tends to establish a cause of action or defense the demurrer must be overruled. (*Zumbrun v. City of Osawatomie,* 130 Kan. 719, 721, 288 Pac. 584; *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, 110 P. 2d 810; *In re Estate of Bond,*

158 Kan. 776, 781, 782, 150 P. 2d 343.) Applying these principles defendants' evidence in substance disclosed:

Plaintiff and her husband purchased the land involved from the defendant Newman with the understanding Newman was to retain an equal undivided one-half interest in and to the oil and gas and other minerals in place; in making the deed Newman, however, did not reserve such interest to himself in the deed, but executed and delivered a deed conveying his entire fee; pursuant to agreement plaintiff and her husband made a reconveyance of a one-half interest of the minerals in place to defendant Newman and to the defendant, E. L. Trock; the latter conveyance now in question was executed July 11, 1936; at the time of the transaction the land was subject to a mortgage which constituted a first lien on the entire fee; plaintiff and her husband assumed and agreed to pay the mortgage lien which was due in March, 1937; plaintiff and her husband were unable to pay the mortgage at that time and desired to obtain an extension thereof; they were obliged to arrange with the mortgagee for such extension and were in doubt concerning the manner in which the mortgagee would want the division of the mineral interests handled; Gilbert Burgin conferred personally with the representative of the mortgagee and was soon thereafter advised the mortgage extension agreement could be obtained; the mortgagee however insisted that the mortgage extension agreement be recorded prior to the recording of the mineral deed; the representative of the mortgagee discussed with Gilbert Burgin different methods which might be employed to handle the entire transaction; Gilbert Burgin concluded to adopt the particular method finally employed; that method was to place the mineral deed in escrow in the Coats State Bank where it was to be held until the mortgage extension agreement was consummated and recorded; Gilbert Burgin advised the representative of the mortgagee that was the method they had decided to employ; the deed was executed in the bank and was placed in an escrow box of the bank immediately upon its execution; it remained in the custody, dominion and control of the bank until June, 1937; the defendant Trock, one of the grantees, was an officer of the escrow bank; the Burgins were both present in the bank when the mineral deed was left with the bank; Gilbert Burgin died before the trial.

The cross-examination of Trock by plaintiff's counsel discloses the following concerning the delivery of the mineral deed to the bank by the plaintiff and her husband:

"Q. What did you say to her? (Meaning Mrs. Burgin.) A. I was talking to them jointly, both of them together. (Meaning Mr. and Mrs. Burgin.)

"Q. What did you say to Mrs. Burgin, if anything? A. Well, we said several things at that time, but among other things, that I would place that deed in the custody of the bank and that I would not deliver that to Mr. Newman or myself until the renewal of the mortgage had been put on record."

The mortgage extension agreement was recorded April 8, 1937, and the mineral deed was recorded by the bank June 17, 1937, which was soon after the bank learned that the mortgage extension agreement had been recorded; plaintiff had made no complaint that the bank had not handled the transaction in compliance with the agreement; a play for oil began in the vicinity of the land, probably in the latter part of 1943; the instant action was filed in June, 1944.

Was the demurrer to defendants' evidence properly overruled? It is conceded the deed in question constituted a severance of minerals in place from surface rights and was therefore of such character as to bring it within the purview of the statute relied upon by plaintiff. (G. S. 1935, 79-420.) Plaintiff contends the deed was delivered to the grantee July 11, 1936, the date of its execution, and that since it was not recorded within ninety days thereof nor listed for taxation before the ensuing March 1, it is void. The pertinent part of the statute reads:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. . . . : *Provided,* That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

It will be observed the first part of the statute clearly indicates it applies only to circumstances where the fee to the surface of the land is held by a person or persons, natural or artificial, and the right or title to any minerals therein is in another or others. When those circumstances exist the law provides that such interests shall be listed, valued and taxed separately to the owners thereof respectively. Manifestly, however, the mere execution of a mineral deed does not constitute a severance of the surface and mineral rights nor does it create a separation in the ownership of such interests so that they can be listed, valued and taxed separately. Such sever-

ance of interests and passing of title do not occur until delivery of the instrument to the grantee.

The trial court expressly found it was clearly the intention of the parties that in order to consummate the entire transaction the parties agreed to have the bank hold the mineral deed until plaintiff and her husband obtained and recorded the mortgage extension agreement. In other words, the parties agreed there should be no severance of the surface and mineral rights until the mortgagee obtained from the Burgins a renewal mortgage on the unsevered and entire fee and recorded it. That agreement constituted a restricted delivery to accomplish the intended purpose. The delivery did not become complete and absolute until the agreement was consummated. That appears to have been the construction all the parties placed upon their agreement. The mortgage extension agreement was recorded April 8, 1937. The mineral deed was held by the bank until that contractual contingency occurred. The deed was recorded in less than ninety days from the date of its intended delivery. It is clear a completed delivery of the mineral deed on July 11, 1936, would have prevented a later execution of a mortgage by plaintiff and her husband upon an unsevered and entire fee. Delivery of the deed on July 11, 1936, would have been contrary to the intent and purpose of the parties. We are not deciding here whether the purpose of the parties might have been effectuated in some other or better manner. All we need to determine is the effect of what was intended and actually done. The court was of the opinion and expressly found the parties were agreed upon their course of conduct and the result to be achieved, they were acting in mutual good faith and that avoidance of taxation was in nowise considered. The finding is significant in that it discloses the court was satisfied defendants' evidence convincingly met the burden of proof.

Before a deed can operate as a valid transfer of title there must be a delivery thereof. (*Wuester v. Folin*, 60 Kan. 334, 56 Pac. 490; *Stump v. Smarsh*, 153 Kan. 804, 808, 113 P. 2d 1058.) Delivery is largely a matter of the grantor's intention to divest himself of title. (*Smith v. Dolman*, 120 Kan. 283, 285, 243 Pac. 323; *Stump v. Smarsh*, supra, p. 808; *Lowry v. Lowry*, ante, p. 11, 14, 159 P. 2d 411.)

It is true that possession by a grantee of a deed absolute in form is prima facie evidence of delivery which can be overthrown only by

clear and convincing evidence and that the burden of showing non-delivery is upon the party who questions the delivery. (*Rohr v. Alexander,* 57 Kan. 381, 46 Pac. 699; *Hoard v. Jones,* 119 Kan. 138, 237 Pac. 888; *Lowry v. Lowry,* supra, p. 13.)

This action was tried to the court without a jury. Defendants assumed the burden of showing the mineral deed was not delivered on the date of its execution, July 11, 1936. There was ample testimony upon which the court, the trier of the facts, could find, and did find, that it clearly appeared the deed was placed in the possession of the bank with the understanding such possession was to be retained and that the deed was not to be delivered to the grantees therein named until the mortgage extension agreement was obtained and recorded. Under those circumstances that finding is conclusive on appeal.

Defendants' evidence sufficiently met the burden of proof to withstand the demurrer. A part of plaintiff's own evidence tended to corroborate the finding that the bank was to hold the mineral deed until the mortgage matter was settled. It is true a part of plaintiff's evidence tended to establish a delivery of the deed on July 11, 1936. It was the province of the trial court to resolve any conflict in the evidence. Upon a consideration of the entire record we are satisfied the judgment cannot be disturbed. In reaching that conclusion we are not unmindful of mineral deed cases cited by counsel for plaintiff which he thinks require a reversal of the judgment. (*Richards v. Shearer,* 145 Kan. 88, 64 P. 2d 56; *Davis v. Skelly,* 159 Kan. 282, 154 P. 2d 114.) We find nothing in those cases concerning an interpretation of G. S. 1935, 79-420, which requires or justifies a reversal of the judgment in the instant case.

The judgment is affirmed.